IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRANDON LEE WOLCOTT,

           Petitioner,                 No. CIV S-08-2527 GEB GGH P

    vs.

KEN CLARK,

           Respondent.           <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2005 conviction for rape in violation of Cal. Penal Code § 261(a)(2).  Pursuant to the Three Strikes Law, petitioner is serving a sentence of fifty years to life.

        The petition raises the following claims: 1) prosecutorial misconduct; 2) ineffective assistance of counsel (5 claims); 3) evidentiary errors (5 claims); 4) jury instruction error; 5) Cal. Evid. Code § 1108 is unconstitutional; 6) cumulative error.

        After carefully considering the record, the court recommends the petition be denied.  Also pending is petitioner's motion to stay this action pending exhaustion of additional claims.  For the reasons discussed below, this motion should be denied as well.

/////

1

II. Exhaustion

The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). If exhaustion is to be waived, it must be waived explicitly by respondent's counsel. 28 U.S.C. § 2254(b)(3). A waiver of exhaustion, thus, may not be implied or inferred. A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. Picard v. Connor, 404 U.S. 270, 276, 92 S. Ct. 509, 512 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir.), cert. denied, 478 U.S. 1021, 102 S. Ct. 1198 (1986).

In the answer, respondent argues that several of the claims raised in the petition are unexhausted but that they should be denied anyway as they have no merit. 28 U.S.C. § 2254(a)(2) (an application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the state courts).[1]

On June 24, 2009, petitioner filed a motion to stay proceedings so that he may return to state court and exhaust the unexhausted claims. In Rhines v. Weber, 544 U.S. 269, 125 S.Ct. 1528 (2005) the United States Supreme Court found that a stay and abeyance of a mixed federal petition should be available only in the limited circumstance that good cause is shown for a failure to have first exhausted the claims in state court, that the claim or claims at issue potentially have merit and that there has been no indication that petitioner has been intentionally dilatory in pursuing the litigation. Rhines, supra, at 277-78, 125 S.Ct at 1535.

A district court may avoid ruling on exhaustion if the unexhausted claims can be denied on their merits. 28 U.S.C. § 2254(2)(b). Because the undersigned finds that all of the claims raised in the petition are without merit, the motion to stay should be denied. No further exhaustion analysis will be made.

---

[1] The petition raises fourteen claims. Only five of those claims, i.e. those raised in the petition for review, are exhausted.

III.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

"Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. <u>Wright v. Van Patten</u>, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. <u>See</u> e.g., <u>Carey v. Musladin</u>, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. <u>Early v. Packer</u>, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. <u>Id</u>. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. <u>Early v. Packer</u>, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).

When reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision. <u>Shackleford v. Hubbard</u>, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000)

\\\\\

4

1   In the instant case, the California Court of Appeal was the last state court to issue

2   a reasoned decision addressing several of petitioner's claims.  See Respondent's Lodged

3   Documents 4, 6.  Accordingly, the undersigned considers whether the denial of these claims by

4   the California Court of Appeal was an unreasonable application of clearly established Supreme

5   Court authority.

6       Petitioner's claim alleging that counsel was ineffective for failing to challenge the

7   prosecutor's motion in limine to exclude testimony from the victim's ex-boyfriend regarding her

8   promiscuity was raised only in a habeas corpus petition filed in the Butte County Superior Court.

9   The Butte County Superior Court issued an opinion denying this petition, which raised several

10  additional claims, on the following grounds.  First, it found that the facts alleged, if true, failed to

11  establish a prima facie case for relief.  Respondent's Lodged Document 8.  It also denied the

12  petition on the following procedural grounds.  It found that it raised claims that were raised or

13  could have been raised on appeal, citing In re Waltreus, 62 Cal.2d 218, 225 (1965).  Id.  It also

14  found that petitioner failed to justify the reasons for his delay in seeking habeas relief.  Id.

15  Finally, the Superior Court found that petitioner failed to demonstrate that newly discovered

16  evidence cast a fundamental doubt on the reliability of his trial.  Id.

17      Ineffective assistance of counsel claims are generally raised in habeas rather than

18  on direct appeal.  People v. Diaz, 3 Cal.4th 495, 557-558 (1992).  For that reason, only two of the

19  reasons given by the Superior Court for denying the petition could have applied to the ineffective

20  assistance of counsel claim raised in the instant action, i.e. petitioner failed to establish a prima

21  facie case for relief and untimeliness.[2]

22      Because it is unclear whether the Superior Court rejected petitioner's ineffective

23  assistance of counsel claim on the merits or on procedural grounds, in an abundance of caution,

24

25      [2] No motion to dismiss for procedural default untimeliness has been made, and in any
    event, would not be accepted by the Ninth Circuit.  See Martin v. Hubbard, 2009 WL 4884581
26  (2009).

this court will conduct a de novo review of this claim. <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002) (where no state court has reached the merits of a claim, the federal court conducts a de novo review).

As will be discussed below, several of the claims raised in this action were not raised in any state court action. Accordingly, the undersigned will conduct a de novo review of those claims as well. <u>Pirtle</u>, <u>supra</u>.

IV. <u>Factual Background</u>

The opinion of the California Court of Appeal contains a factual summary of petitioner's offense. After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

> The district attorney filed an information charging defendant with forcible rape and alleging that defendant had suffered a prior conviction for rape, subjecting him to enhanced punishment under section 667, subdivision (a)(1). The information further alleged the prior rape conviction constituted a serious or violent felony within the meaning of section 667. Finally, the information alleged that an aggravated circumstance applied: defendant had been previously convicted of the same offense, subjecting him to 25 years to life under section 667.61, subdivisions (a) and (d)(1).
>
> A jury trial followed. The victim testified about the events leading up to the assault.
>
> In winter of 2004 the victim moved to Butte County and planned to enroll at a local university. Since she did not know anyone, she used an instant message service to chat on her computer with other people.
>
> One afternoon, defendant contacted the victim via an instant message. The victim replied, saying she was new in the area and felt isolated. Defendant said he wanted to meet her and asked if she "liked to party." The victim responded that the question made her uncomfortable since she had just met him on line.
>
> Defendant told the victim he was coming to town to register that afternoon at the university. The victim agreed to go with defendant to find out about the university's registration process. Defendant and the victim exchanged telephone numbers, and defendant planned to pick up the victim at home that afternoon.
>
> Defendant and the victim visited the campus for about half an hour and figured out the registration process. The victim felt comfortable with defendant; he "seemed like a nice guy." She asked defendant if he would like to get a drink.
>
> Because the victim had lost her driver's license and did not have identification, she

could not "get into an establishment." Defendant suggested they drink in a nearby park, so the couple went to a liquor store and purchased a pint of rum and two one-liter bottles of Pepsi Cola. By the time they got to the park, it had started to get dark. The pair proceeded to a secluded picnic table, sat down, and talked as they drank.

About half an hour later, defendant began to kiss the victim. They kissed on and off for a while. Defendant attempted to touch the victim's breasts, but she pushed his hands away and told him to stop. Defendant persisted and the victim told him, "Cut it out. I don't want you to do that."

Defendant then tried to remove the victim's pants, but she again pushed his hands away. Defendant tried to touch the victim under her shirt. His attempts became increasingly forceful. The victim continued to tell defendant to stop and that she wanted to go home.

In response to her protests, defendant put his hands around her neck and squeezed. She pulled his hands away. Defendant put his hands around her neck over a dozen times. Every time the victim pushed his hands away, defendant tried to take off her clothes.

The victim became terrified and repeatedly asked, "Why are you doing this to me?" She attempted to hit defendant in the head with the rum bottle, but defendant grabbed it. Defendant asked: "What the hell do you think you're trying to do? You're not going to get out of this. You're not going to get away. You started this; you have to finish it." The victim continued to struggle.

Defendant threw the victim into a blackberry patch and lay on top of her, pinning her down. The victim feared she could not get away, "[t]hat he was going to do it regardless. And I didn't want to-it was going to be worse if it was on the ground." After the victim told defendant, "All right, I'll give you what you want," he let her get up.

The victim tried to formulate some sort of plan and again tried to hit defendant with the rum bottle. When defendant grabbed the bottle, the victim screamed "Rape!"

The victim believed her life was in danger and began to cry. She told defendant to "get it over with" and asked him to use a condom. The victim unfastened her pants and made sure defendant had a condom on. Defendant had sexual intercourse with her as she cried.

Afterward, the victim pulled up her pants and tried to calm down. As defendant searched for something under the picnic table, the victim began to slowly walk away. As she moved down the path, defendant began following her. The victim began to run.

The victim spotted a security guard's car with a rotating yellow light. She ran toward the guard and told him she had been raped and the man was following her down the path.

The security guard who testified corroborated the victim's testimony. She was crying hysterically and the guard put her in his car. The victim pointed to defendant's car in the parking lot, and the guard parked behind the vehicle, blocking it from leaving. The victim told the guard she feared defendant was going to kill her. The guard then called the police, who arrived within minutes.

Officer Todd Lefkowitz testified that he responded to the guard's call. He saw defendant standing behind the guard's car. When defendant saw Lefkowitz he approached the officer. According to the officer, defendant "was cooperative, but he appeared like somebody that needed to get his side of the story heard. [¶] He was-he was very talkative." The victim would not speak with the male officers, but later spoke with a female officer.

About an hour later the victim spoke with Detective Cesar Sandoval at the police department. Sandoval testified that the victim was still upset and appeared to have been crying for quite a while. The victim's statement to Sandoval comported with her testimony at trial.

Sandoval requested blood alcohol tests for both defendant and the victim. The victim's blood alcohol level was .11 percent; defendant's was zero.

Later on the evening of the incident, the victim went to the hospital for a sexual assault examination. Family nurse practitioner Sally Vertolli testified that her examination of the victim revealed a small laceration over her left breast and lacerations on her left buttock. In addition, Vertolli found abrasions and lacerations on the victim's neck. Redness on the victim's neck appeared to be from pressure on the skin causing broken blood vessels. In addition, the examination revealed an abrasion just below the vaginal opening "consistent with vaginal penetration with struggle."

Vertolli also examined defendant. Vertolli found lacerations on the back of defendant's hands and scrapes on his shins. Defendant had a red area on his neck that Vertolli believed was a pressure injury, possibly a "hickey." In addition, there was a small area of redness on the underside of defendant's penis. The clothing of both victim and defendant was muddy and wet.

Officers who investigated the crime scene testified they recovered a condom wrapper, an artificial fingernail, and a plastic soda bottle on the night of the incident. The following day they found a rum bottle and the other soda bottle. Inside the soda bottle was a used condom.

The prosecution also introduced evidence of a prior rape committed by defendant against a 15-year-old girl. R.V. testified she met defendant in January 2000 at a friend's house. After she left to walk home, R.V. took a shortcut through a park. When she entered the park, defendant walked up and R.V. realized he had been following her. R.V. told defendant she needed to go home; he continued to follow her.

Defendant pushed R.V. against a cabin in the park and began to kiss her. She pushed him away and told him again she needed to go home. Defendant continued to follow R.V. He pushed her against a bridge railing and tried to kiss her. Once

again she rebuffed him.

Defendant responded by pushing R.V. to the ground. As she began screaming, defendant grabbed her and slammed her head against the ground until she stopped yelling. He dragged her under a nearby bridge as she begged him to leave her alone. Defendant hit her in the face, pulled down her pants, and began having sexual intercourse with her.

R.V. asked defendant what his children would think if they knew what he was doing. Defendant got up and called her obscene names. R.V. pulled on her clothes and began to leave. Defendant followed and told R.V. he would kill her if she told anyone. The parties stipulated that defendant pled guilty or no contest to rape.

Defendant testified in his own behalf. According to defendant's version of events, he and the victim met on line. The victim was new in town, and she asked defendant to take her to the university to register. After they registered, defendant asked the victim what she wanted to do. The victim responded: "Well, is it too early to drink?"

The victim told defendant that when she drank she had a tendency to black out or become belligerent. Since the victim would need identification to get into a bar but did not have any, they purchased rum at a liquor store. The victim wanted to "get somewhere fast" and begin drinking, so the pair went to a nearby park. The victim began drinking as they were walking into the park.

The victim and defendant sat on a picnic table. Defendant had only a couple of sips of rum; the victim finished the bottle. They began to kiss, and the victim sucked on defendant's neck. She put her hands under his clothing as she continued to drink.

The victim asked defendant if he had a condom and he said he did. They had intercourse on the picnic table. During the act of intercourse, the victim told defendant she really liked him and wanted them to be together. However, when defendant demurred and said he considered it a "one-night stand," the victim became angry. She shoved him off and defendant scraped his shins on the table's bench.

As they dressed, the victim said she did not "just do this with anybody" and she was "not that kind of girl." She became angry and told defendant she was going to yell "rape." When defendant looked at her as if she were crazy, the victim grabbed him by the throat and yelled rape. Defendant grabbed the victim by the throat to "get her off" him and they began wrestling. Defendant fell into some thorny bushes.

The victim appeared to calm down, so defendant let her up. She grabbed the rum bottle and tried to hit defendant in the head. Defendant fended off the blow. The victim said she wanted to leave, and defendant let her go.

As they proceeded up the path, defendant saw flashing lights and the victim began to run. Defendant went to "talk to whoever was up there, because [he] knew where this was going." After the police officer arrived, defendant told him "I'm

9

pretty sure I'm the guy you're looking for." He identified himself and said, "She's accusing me of raping her."

Defendant admitted the prior assault on R.V. He had been drinking that night and had been under the influence of alcohol.

Defendant's former girlfriend, Athena Breitenstein, testified she met him on the Internet in 2003. Eventually they met in person. When defendant made a sexual advance, Breitenstein told him she did not want to become intimate. Defendant never tried to force her. They later became romantically involved. Although they are no longer involved, Breitenstein still cares for defendant as a friend.

Defendant's mother also testified. As she sat outside the courtroom, she heard prosecution witness Miars, the security guard, tell someone: "This guy's done this before. Somebody should just take him behind the barn and shoot him."

The jury found defendant guilty of forcible rape. Defendant waived a jury trial on the prior conviction. The court found the prior allegation true.

The court sentenced defendant to 25 years to life for rape under section 667.61, subdivision (a). The court doubled the sentence as a result of the prior strike to 50 years to life imprisonment under sections 667, subdivision (c)(1) and 1170.12, subdivision (c)(1). The court stayed the five-year enhancement under section 667, subdivision (a)(1). In sum, the court sentenced defendant to life imprisonment with no possibility of parole for 50 years. Defendant filed a timely notice of appeal.

Lodged Document 4, 2-10.

V. <u>Discussion</u>

    A. <u>Prosecutorial Misconduct</u>

    Petitioner argues that the prosecutor committed misconduct during closing argument by referencing evidence it had successfully excluded from trial. The California Court of Appeal, the last state court to issue a reasoned decision addressing this claim, denied this claim as follows:

Defendant argues the prosecution committed misconduct during closing argument by referencing evidence it had successfully excluded from trial. According to defendant, the prosecution "elected to take unfair advantage of the absence of such evidence." We disagree.

Background

During closing argument, defense counsel argued that the credibility of the victim and defendant formed a central issue in the case. Defense counsel reasoned: "How

can you say that you think [the victim] is any more credible than [defendant] when you don't know a darn thing about her? Do you know who her best friend is? Do you know what she studies in school? Do you know anything about that woman at all other than what she let you see during her testimony for what was maybe less than two hours total? That's all you know. [¶] So I don't see how under this circumstance any human being who's being truthful and honest about the situation could say that with the limited information you have on these two people, that you can say one or the other is much more reliable, and that she's much more reliable than not, to prove it to you beyond a reasonable doubt, the highest burden in the world."

The prosecution, during closing argument, responded: "You were asked, well, do you know her? Do you know [the victim], who her friends are, who her family is? You're being asked to assume facts not in evidence. And I'm sure Counsel didn't mean for you to do that, because you're not allowed to do that. [¶] Your object, your sworn duty is to say: What is the evidence? What do we know? What did we hear? And then apply that to the law. [¶] [The victim] did take the stand. She was unfortunately asked questions upon questions upon questions of a personal nature upon something very personal about something that hurt her deeply. She could have been asked about her social background, her friends, but she wasn't. Because it's not something that they didn't ask then but they want you to consider now."

Defense counsel objected to the prosecution's argument as improper, stating: "Your Honor makes the rulings."

Discussion

Defendant contends the prosecution committed misconduct because it had previously successfully moved to exclude evidence of the victim's sexual proclivities. A prosecutor's misconduct violates the federal Constitution when it comprises a pattern of conduct so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render the trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury. ( *People v. Prieto* (2003) 30 Cal.4th 226, 260.)

Defendant focuses on the prosecutor's statement that "[the victim] could have been asked about her social background, her friends, but she wasn't. Because it's not something that they didn't ask then but they want you to consider now." However, the prosecution was responding to defense counsel's closing argument, which questioned why the jury wasn't told more about the victim's background. The prosecution did not suggest defense counsel should have presented evidence concerning the victim's sexual history. The prosecution did not bring up the lack of information; defense counsel raised the issue.

In addition, the trial court ruled only that evidence of the victim's prior sexual conduct could not be broached. The trial court's ruling did not prevent defense counsel from introducing evidence regarding other aspects of the victim's background, including friends and social activities, the very evidence defense counsel stated was lacking in closing argument. We find no misconduct.

Respondent's Lodged Document 4, pp. 32-35.

The Ninth Circuit stated the applicable standard for prosecutorial misconduct claims in <u>Tak Sun Tan v. Runnels</u>, 413 F.3d 1101, 1112 (9th Cir.2005):

> In evaluating the petitioners' allegations of prosecutorial misconduct on a writ of habeas corpus, *Darden v. Wainwright* instructs us that "it 'is not enough that the prosecutors' remarks were undesirable or even universally condemned[,]' [t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (citations omitted). In other words, under *Darden*, the first issue is whether the prosecutor's remarks were improper and, if so, whether they infected the trial with unfairness.

Based on the reasoning of the California Court of Appeal, the undersigned finds that the prosecutor's at-issue remarks during closing argument did not infect the trial with unfairness, much less being an "unreasonable" application of Supreme Court authority. The undersigned agrees with the California Court of Appeal that the comments were not related to the excluded evidence of the victim's prior sexual conduct. The comments were in response to defense counsel's argument regarding a lack of evidence of the victim's social history. The trial court's ruling excluding evidence of the victim's sexual history did not prevent defense counsel from presenting evidence of the victim's social history, i.e. her friends, course of study in school, etc. For that reason, the prosecutor did not commit misconduct by suggesting that trial counsel could have offered this social history evidence.

The denial of this claim by the California Court of Appeal, the last state court to issue a reasoned decision addressing this claim, was not an unreasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

B. <u>Ineffective Assistance of Counsel</u>

*Legal Standard*

The test for demonstrating ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of

reasonableness.  <u>Strickland</u>, 466 U.S. at 688, 104 S. Ct. at 2065.  To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  <u>Id</u>. at 690, 104 S. Ct. at 2066.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  <u>Id</u>., 104 S. Ct. at 2066.  "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  <u>Hughes v. Borg</u>, 898 F.2d 695, 702 (9th Cir. 1990) (citing <u>Strickland</u> at 466 U.S. at 689, 104 S. Ct. at 2065).

Second, a petitioner must affirmatively prove prejudice.  <u>Strickland</u>, 466 U.S. at 693, 104 S. Ct. at 2067.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id</u>. at 694, 104 S. Ct. at 2068.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  <u>Id</u>., 104 S. Ct. at 2068.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard.  <u>Williams v. Taylor</u> , 529 U.S. 362, 391-93, 120 S. Ct. 1495, 1512-13 (2000), (citing <u>Lockhart v. Fretwell</u>, 113 S. Ct. 838, 506 U.S. 364 (1993)).

The Supreme Court has emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> In <u>Strickland</u> we said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S., at 689, 104 S.Ct. 2052.  Thus, even when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a [petitioner] must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  <u>Ibid</u>. (quoting <u>Michel v. Louisiana</u>, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

> For [petitioner] to succeed, however, he must do more than show that he would have satisfied <u>Strickland's</u> test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it

is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly. <u>See</u> <u>Williams</u>, <u>supra</u>, at 411, 65 S. Ct. 363.[3] Rather, he must show that the [ ]Court of Appeals applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.

<u>Bell v. Cone</u>, 535 U.S. 685, 698-699, 122 S. Ct. 1843,1852 (2002).

*Counsel Allowed Petitioner to Waive Jury Trial on Prior Conviction*

Petitioner argues that trial counsel was ineffective for waiving a jury trial on his prior conviction. The California Court of Appeal, the last state court to issue a reasoned decision addressing this claim, denied this claim as follows:

Defendant claims trial counsel performed ineffectively in failing to insist upon a jury trial for the prior conviction allegation after the jury was discharged. Defendant argues that had counsel insisted upon a jury trial, the priors could not have been found after discharge of the jury. The argument is at odds with Supreme Court authority.

Background

The information charged defendant with rape and alleged he had suffered a prior conviction for forcible rape in May 2000. The trial court granted defense counsel's motion to bifurcate the trial of the prior conviction.

At trial, R.V. testified about the 2000 rape. The parties stipulated that defendant pled guilty or no contest to rape. Following the verdict, defense counsel stated: "Your Honor, I have no objection to you doing a formal waiver [admonition]." The court advised defendant of his right to a jury trial on the truth of the prior conviction allegation. Defendant waived his right to a jury trial.

The prosecution submitted a certified abstract of judgment reflecting the prior conviction, a photograph, and fingerprints. The court found the prior conviction true and sentenced defendant to 25 years to life for rape under section 667.61, subdivision (a). The court doubled the sentence as a result of the prior strike, yielding a sentence of 50 years to life under sections 667, subdivision (c)(1) and 1170.12, subdivision (c)(1).

Discussion

Defendant contends defense counsel performed ineffectively in waiving a jury trial on the prior conviction allegation. According to defendant, since the jury had been discharged before he personally waived a jury trial, had he instead insisted on a jury trial, the jury could not have been reconvened. The court could not have

---

[3] This internal citation should be corrected to <u>Williams v. Kaiser</u>, 323 U.S. 471, 477, 65 S. Ct. 363 (1945).

proceeded and the enhancement allegation could not have been found true. Therefore, defense counsel was ineffective in not taking advantage of a procedural gaffe.

When a defendant is charged with having suffered a prior conviction, "the question of whether or not the defendant has suffered the prior conviction shall be tried by the jury that tries the issue upon the plea of not guilty." (§ 1025, subd. (b).) Defendant argues that once the court dismissed the jury, it was powerless to reconvene the jury had he asserted his right to a jury trial on the prior convictions. Defendant is mistaken.

In *People v. Saunders* (1993) 5 Cal.4th 580 ( *Saunders* ), the Supreme Court confronted a similar issue. The trial court had bifurcated trial on the prior conviction allegations on the defendant's motion. After the jury found the defendant guilty of burglary, the court discharged the jury. The following day, the defendant waived his right to a jury trial on the prior conviction allegations. ( Id. at p. 586.) Defense counsel, who was not present when the jury returned its verdict, argued she would not have advised the defendant to waive a jury trial had she known the court had already discharged the jury. The trial court allowed the defendant to withdraw his waiver and impaneled a new jury to try the prior conviction allegations. ( Id. at pp. 586-587.)

The Supreme Court found no error in the trial court's impaneling of the second jury. According to the court: "We do not believe that the Legislature, in enacting sections 1025 and 1164, intended to create a procedural trap that would enable defense counsel to ambush the trial judge and deprive the People of their statutory right to prove one or more alleged prior convictions for the purpose of enhancing the punishment of the repeat offender. Nor should the law place a defense attorney in the untenable position of having to choose between honoring counsel's commitment to the court (that jury trial on the prior conviction allegation would be waived) and counsel's duty to his or her client (to offer all available defenses to the charges and allegations contained in the accusatory pleading) ." ( *Saunders*, supra, 5 Cal.4th at pp. 590-591.)

Defendant's argument thus rests on the erroneous premise that the trial court would have been powerless to act had he requested a jury trial. Under Saunders the court could have impaneled a second jury had defendant asserted his right to a jury trial on the prior conviction. Therefore, defense counsel did not perform ineffectively in failing to insist on a jury trial.

Respondent's Lodged Document 4, pp. 38-41.

The trial court granted the motion by petitioner's counsel to bifurcate the trial of the prior conviction. RT at 1-2. After the jury was released, the prosecutor asked,

Your Honor, I just want to clarify as far as the bifurcated portions, is that now moot with the stipulation and the prior that's been submitted under Exhibit 10? Or does defense need to go forward?

RT at 440.

1    Petitioner's counsel and then petitioner himself waived the right to a jury trial on

2    the prior conviction.  RT at 440.

3    For the reasons stated by the California Court of Appeal, the undersigned finds

4    that petitioner's counsel was not ineffective for failing to insist upon a jury trial on the prior

5    conviction after the jury had been discharged.  Pursuant to Saunders, discussed by the California

6    Court of Appeal, had petitioner's counsel requested a jury trial on the prior conviction after

7    discharge of the jury, the trial court could have impaneled a second jury.

8    Moreover, petitioner does not claim that there was insufficient evidence to support

9    his prior conviction.  Had counsel not waived the jury trial, a jury would have found petitioner to

10   have suffered the prior conviction.

11   In the petition, petitioner cites People v. Tindall, 24 Cal.4th 767 (2000) in support

12   of this claim.  The issue in Tindall was whether a postverdict amendment to an information to

13   add prior conviction allegations was permissible before sentencing but after the jury had been

14   discharged.  24 Cal.3d at 769-770.  The California Supreme Court decided that the same jury

15   must decide both the issue of a defendant's guilt and the truth of any prior conviction allegations

16   in the absence of a defendant's waiver or forfeiture.  Tindall, 24 Cal.4th at p. 782.

17   The facts of Tindall were different than those of the instant case.  Tindall did not

18   overrule the holding in Saunders that a trial court may impanel a new jury if a defendant asserts

19   his right to a jury trial on the validity of his prior convictions after the jury has been discharged

20   so long as the information was not amended to add the prior convictions after the jury was

21   discharged.

22   More importantly, although petitioner may utilize a violation of state law to

23   demonstrate ineffective assistance of counsel, petitioner may not simply argue in attempting to

24   show such that the Court of Appeal in his case "got state law wrong."  Byrd  v. Lewis, 566 F.3d

25   855, 861 (9th Cir. 2009); Martinez v. Evans, 2009 WL 3497735 (9th Cir. 2009).  Arguments

26   directed at the correctness of state law are no more cognizable for an ineffective assistance claim

16

than when arguing that a state court "got it wrong" on a straight application of state law.

The denial of this ineffective assistance claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

*Impeachment With the Victim's Prior Misdemeanor*

Petitioner argues that his trial counsel was ineffective for failing to argue that the victim's prior citation for lewd conduct was admissible to impeach her as conduct amounting to moral turpitude. The California Court of Appeal, the last state court to issue a reasoned decision addressing this claim, denied this claim as follows:

> Prior to trial, the prosecution acknowledged the victim had previously pled guilty to misdemeanor lewd conduct in connection with appearing on a beach topless. The prosecution moved to exclude the evidence.
>
> Defense counsel stated it did not intend to pursue the prior conviction unless the victim's testimony made it relevant. The trial court granted the prosecution's motion, subject to reconsideration.
>
> Defendant contends defense counsel performed ineffectively in failing to argue that the victim's prior citation for lewd conduct was admissible as conduct amounting to moral turpitude. In support, defendant cites *People v. Wheeler* (1992) 4 Cal.4th 284 ( Wheeler ).
>
> In *Wheeler*, the Supreme Court found "nonfelony conduct involving moral turpitude" admissible to impeach a witness's credibility. ( *Wheeler*, supra, 4 Cal.4th at p. 295.) However, the Attorney General contends the victim's prior misdemeanor conviction did not amount to moral turpitude.
>
> The parties agree the victim pled guilty to a violation of section 647, which provides that anyone "[w]ho solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view" is guilty of disorderly conduct, a misdemeanor. (§ 647, subd. (a).)
>
> As the Attorney General points out, no California case has found that a misdemeanor violation of section 647 is a crime of moral turpitude for impeachment purposes. " 'Whether the trial court admits evidence of past misconduct should be determined solely on the basis that that conduct evinces moral turpitude. The label is not important [i.e., what type of statutorily defined offense, if any, the conduct constitutes]-the conduct is.' " ( *People v. Ayala* (2000) 23 Cal.4th 225, 273.) Defendant cites three cases involving violations of section 647 as a predicate for professional disciplinary proceedings in which the underlying conduct involved more than simple indecent exposure. He makes no

17

effort to demonstrate that the conduct underlying the victim's conviction demonstrates moral turpitude. Defense counsel cannot be found to be ineffective in failing to pursue an unsupportable argument that the victim's prior conviction was admissible for impeachment purposes.

Respondent's Lodged Document 4, pp. 36-37.

"Not all past misconduct has a 'tendency in reason to prove or disprove' a witness's honesty or veracity." People v. Wheeler, 4 Cal.4th 284, 295 (1992). "[I]t is undeniable that a witness's moral depravity of any kind has 'some tendency in reason' [citation] to shake one's confidence in his honesty...[¶] There is...some basis...for inferring that a person who has committed a crime which involves moral turpitude [even if dishonesty is not a necessary element] is more likely to be dishonest than a witness about whom no such thing is known." People v. Castro, 38 Cal.3d 301, 315, 211 Cal.Rptr. 719 (1985).

"In general, a misdemeanor – or any other conduct not amounting to a felony – is a less forceful indicator of moral character or dishonesty than is a felony." Wheeler, 4 Cal.4th at 296. "Moreover, impeachment evidence other than felony convictions involves problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present." Id. "Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value." Id.

"However, the threshold inquiry remains whether the prior conduct has some logical bearing upon the witness' veracity." People v. Chavez, 84 Cal.App.4th 25, 28, 100 Cal.Rptr.2d 680 (2000). "To answer this question, we must ascertain whether the least adjudicated elements of the offense constitute a crime of moral turpitude." Id.

The California Supreme Court has divided crimes of moral turpitude into two groups. (*People v. Castro* (1985) 38 Cal.3d 301, 211 Cal.Rptr. 719, 696 P.2d 111.) The first group includes crimes in which dishonesty is an element (i.e., fraud, perjury, etc.). The second group includes crimes that indicate a " 'general readiness to do evil,' " from which a readiness to lie can be inferred. ( Id. at p. 315, 211 Cal.Rptr. 719, 696 P.2d 111.) Crimes in the latter group are acts of "baseness, vileness or depravity in the private and social duties which a man owes

to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." ( *In re Craig* (1938) 12 Cal.2d 93, 97, 82 P.2d 442.) "Although the inference is not as compelling in the latter case, 'it is undeniable that a witness's moral depravity of any kind has some 'tendency in reason' [citation] to shake one's confidence in his honesty." ( *People v. Thornton* (1992) 3 Cal.App.4th 419, 422, 4 Cal.Rptr.2d 519.) <u>Id</u>.

The victim was convicted of Cal. Penal Code § 647(a), <u>see</u> RT at 3, which provides, "Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: (a) Who solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to the public."

The least adjudicated elements of Cal. Penal Code § 647(a) do not include dishonesty. Nor do they necessarily indicate a general readiness to do evil from which a readiness to lie can be inferred. For these reasons, petitioner's counsel was not ineffective for seeking to impeach the victim with her prior misdemeanor conviction for violating Cal. Penal Code § 647(a).

The denial of this claim by the California Court of Appeal was based on state law, and not an unreasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

> *Counsel Failed to Challenge Prosecutor's Motion In Limine to Exclude Testimony from Victim's Ex-Boyfriend Regarding her Promiscuity*

Petitioner argues that his trial counsel was ineffective for failing to object to the prosecution's motion in limine to exclude the testimony of the victim's ex-boyfriend regarding her promiscuity. Petitioner raised this claim in the habeas corpus petition filed in the Butte County Superior Court. Respondent's Lodged Document 7. The background to this claim is as follows.

Prior to trial, the prosecutor and trial counsel discussed with the trial court statements by the victim's ex-boyfriend that the victim had engaged in promiscuous behavior. In particular, trial counsel stated that she expected the victim to testify that she does not engage in

19

sexual behavior on the first date.  RT at 6.  Trial counsel stated that this testimony would open the door to impeachment by statements of her ex-boyfriend that she had engaged in sexual intercourse on the first date with her ex-boyfriend but also in front of him with another individual when they were not on a date.  RT at 6.  The court granted the prosecution's motion to exclude questions regarding the victim's prior sexual activities with dates and acquaintances subject to further review after her testimony.  RT at 6.

During the victim's testimony, defense counsel again raised with the court the issue of impeachment by statements by the victim's ex-boyfriend that she had engaged in promiscuous behavior.  RT at 96-100.  Defense counsel argued that she should be allowed to question her regarding her promiscuous behavior based on her testimony that she did not do things like that.  Id.  The court denied trial counsel's motion stating that the door allowing these questions in had not yet been opened.  RT at 100.  The undersigned has reviewed all of the victim's testimony.  She did not testify that "she did not do things [act promiscuously] like that." The closest the victim came to testifying about anything related to social behavior was that "she liked to party."  The court stated that trial counsel could renew the request at the conclusion of cross-examination.  RT at 100.  Petitioner argues that counsel was ineffective for failing to raise the issue again at the conclusion of cross-examination.

In the petition, petitioner does not cite any portion of the victim's testimony during cross-examination that would have opened the door to impeachment regarding her prior promiscuous conduct.  This court has reviewed counsel's cross-examination as well as the re-direct examination by the prosecutor and finds no testimony by the victim which would have justified counsel again requesting that the trial court allow her to ask the victim about her allegedly prior promiscuous behavior.

Petitioner argues that by failing to re-raise the issue, counsel waived the issue on appeal.  On direct appeal, petitioner argued that the trial court improperly denied trial counsel's request to impeach the victim with her prior promiscuous behavior.  The California Court of

Appeal faulted counsel for not properly raising this issue in a written motion, but went on to find that the claim had no merit. Respondent's Lodged Document 4, pp. 28-30.

While trial counsel should have filed a written motion explaining the relevance of the evidence of sexual conduct in attacking the victim's credibility, the trial court did not deny counsel's request to impeach the victim on this ground. In addition, the California Court of Appeal went on to address the merits of the claim that the trial court improperly denied counsel's request to impeach the victim based on her prior promiscuous conduct despite counsel's failure to file a written motion. See infra. For these reasons, petitioner was not prejudiced by counsel's failure to file a written motion.

Having conducted a de novo review of the record in an AEDPA context, the undersigned finds that this claim is without merit and should be denied.

*Trial Counsel Failed to Challenge Prosecution's Expert Witness*

Petitioner argues that trial counsel was ineffective for failing to challenge the prosecution's expert witness, Family Nurse Practitioner Vertolli, on grounds that she was not qualified to render an expert opinion. Petitioner also argues that trial counsel should have objected to her qualifications to testify regarding whether the victim's injuries were caused by nonconsensual intercourse.

Petitioner did not raise this claim in any either his direct appeal or habeas corpus petition filed in the Superior Court. Accordingly, the court conducts a de novo review of this claim, but pursuant to AEDPA error standards.

On direct appeal, petitioner argued that the trial court should have excluded Vertolli because she was not qualified to testify as an expert. Petitioner also argued that the trial court should have not permitted her testimony that the intercourse was nonconsensual because she was not qualified to render this opinion. The California Court of Appeal rejected these claims for the following reasons:

Defendant challenges Vertolli's qualifications to testify as an expert. In particular,

1  defendant claims Vertolli was not qualified to give expert testimony as to the cause of the victim's injuries.

2

3  Preliminarily, we note defendant never objected at trial to Vertolli's general qualifications as an expert. Instead, defendant specifically objected to Vertolli's qualifications to testify as to the cause of the injuries suffered by the victim.

4

5  In any event, the trial court did not abuse its discretion in allowing Vertolli to testify as an expert regarding her examination of the victim. Vertolli, a nurse practitioner for 23 years, has performed sexual assault examinations since 1998. Over the years, Vertolli performed approximately 160 adult examinations. She received special training in sexual assault examinations at U.C. Davis and the SANE (Sexual Assault Nurse Examiner) Institute.

6

7

8  To qualify as an expert, a witness must possess special knowledge, experience, training, or education sufficient to qualify the witness as an expert on the subject. (Evid.Code, § 720.) A court abuses its discretion in allowing expert testimony only if the witness clearly lacks qualifications as an expert. ( *People v. Panah* (2005) 35 Cal.4th 395, 478.) Vertolli possessed special knowledge, experience, and training sufficient to qualify as an expert on sexual assault examinations.

9

10

11

12  Defendant also argues Vertolli lacked qualifications to render an opinion that the victim's injuries were caused by nonconsensual intercourse; the opinion was beyond her expertise as a SANE nurse and was not supported by citations to scientific studies that correlate specific injuries to sexual assault.

13

14  However, as the People note, " ' "[w]here a witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes more to the weight of the evidence than its admissibility." ' " ( *People v. Bolin* (1998) 18 Cal.4th 297, 322.) Vertolli gave her opinion as a SANE nurse. Defense counsel vigorously challenged Vertolli's opinion. During cross-examination, Vertolli admitted the victim's physical injuries could also have resulted from consensual sexual intercourse.

15

16

17

18  Although defendant faults Vertolli's lack of scientific studies to support her opinion, he fails to cite any authority, statutory or otherwise, that requires such support. Instead, defendant cites cases involving testimony by experts regarding application of a new scientific technique. Vertolli testified regarding her medical examination of the victim, not about a new scientific method.

19

20

21  Respondent's Lodged Document 4, pp. 18-20.

22       Again, petitioner is arguing, contrary to the opinion of the California appellate

23  court, that he believed a witness to be unqualified pursuant to state evidentiary standards. He

24  may not make that argument in federal habeas. Nor does the opinion of the state court come

25  close to establishing an evidentiary error so egregious that due process would be offended. See

26  Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475 (1991). Had counsel made an objection, it would

have been rejected for the reasons stated by the California Court of Appeal.

For the reasons given by the California Court of Appeal, the undersigned finds that counsel did not fail to object to Vertolli's qualifications to testify regarding whether the victim's injuries were caused by nonconsensual intercourse. Vertolli had sufficient knowledge of the subject. She testified that she had been doing sexual assault exams of adults since 2000. RT at 151. She took course work through the SANE Institute in 1999 to learn how to perform these exams on adults. RT at 152. She had done about 160 exams at the time of trial. RT at 152. In addition, petitioner's counsel vigorously cross-examined Vertolli regarding her opinion that the injuries of the victim and petitioner were consistent with non-consensual intercourse.[4]

In his opening brief filed in the California Court of Appeal, petitioner argued that "few scientific studies correlate injuries by the conclusion they were caused by sexual assault, and no such studies were cited by Ms. Vartolli. Without such support, she should not have been permitted to opine on the issue of causation." Respondent's Lodged Document 1, p. 27. Petitioner went on to cite Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 590, 113 S.Ct. 2786 (1993) for the proposition that proposed expert testimony must be supported by appropriate validation.

Notwithstanding that Daubert is a case that sets evidence standards only for federal courts, and has not been constitutionalized, and does not bind state courts, in essence, petitioner's argument is that no expert testimony on any subject is permitted unless it is accompanied by scientific studies to back up the opinion. The undersigned is aware of no such requirement. Petitioner's conclusory argument that "few scientific studies correlate injuries with

---

[4] On cross-examination, Vertolli testified that the victim had no physical marks on her skin consistent with having been choked. RT at 180. The victim had testified that petitioner "started strangling me, putting his hands around my neck, obstructing my air, freaking me out, causing me to panic." RT at 52. During cross-examination, Vertolli testified that a red mark on petitioner's neck could have been a hickey. RT at 183. During cross-examination, Vertolli also testified that the laceration on the victim's vagina could be consistent with consensual intercourse. RT at 185.

the conclusion that they were caused by sexual assault" is not sufficient to undermine the trial court's ruling that Vertolli was qualified to offer an opinion regarding whether the intercourse was consensual.

For these reasons, counsel was not ineffective for failing to challenge Vertolli's testimony on grounds that she provided no studies in support of her opinion.

Petitioner also argues that counsel was ineffective for failing to obtain his own expert to refute Vertolli's testimony. However, other than this conclusory allegation, petitioner has presented no evidence that an expert would have been able to provide testimony in his favor or who would have been capable of challenging Vertolli's qualifications. See James v. Borg, 24 F.3d 20 (9th Cir. 1994) (conclusory allegations unsupported by specific facts are insufficient to warrant habeas relief).

Having conducted a de novo review of the record, the court finds that the instant claim is without merit and should be denied.

*Trial Counsel Failed to Move to Exclude Petitioner's Prior Conviction and Uncharged Offenses*

Petitioner argues that trial counsel was ineffective for failing to challenge the prosecution's motion to admit evidence of petitioner's prior conviction and uncharged offenses as untimely. Petitioner argues that the prosecution's motion was untimely pursuant to Cal. Penal Code § 1054.7 and Cal. Evid. Code § 402. The record indicates that this claim was not raised in petitioner's direct review or habeas petition filed in the Superior Court. Accordingly, the undersigned conducts a de novo review of this claim, again pursuant to AEDPA error standards.

The background to this claim is as follows. On November 9, 2005, the prosecution filed a motion to admit evidence of petitioner's prior and uncharged offenses. CT at 25. In particular, the prosecution moved to admit the testimony of the victim of petitioner's prior rape conviction. CT at 27. The prosecution also moved to admit testimony of the victim of a prior uncharged incident where petitioner allegedly became aggressive. CT at 27-28.

24

At the trial, which began on November 16, 2005, the victim of petitioner's prior rape conviction testified. RT at 202. The prosecution did not admit evidence related to the uncharged act.

Cal. Penal Code Section 1054 et seq., also known as the reciprocal discovery statute, requires the prosecution to "disclose to the defendant or his or her attorney" certain "materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies." Such materials include: "(a) The names and addresses of persons the prosecutor intends to call as witnesses at trial. [¶] ... [¶] (e) Any exculpatory evidence. [¶] (f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial ...." Cal. Penal Code § 1054.1, subds.(a), (e) & (f). In the absence of good cause, this evidence must be disclosed at least 30 days before trial, or immediately if discovered or obtained within 30 days of trial. Cal. Penal Code § 1054.7.

The provision of the California Penal Code governing the enforcement of discovery rights is contained in § 1054.5 which provides that upon a showing that a party has not complied with section 1054.1, "a court may make any order necessary to enforce the provisions of this chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order. Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure." Section 1054.5(c) provides that "[t]he court may prohibit the testimony of a witness pursuant to subdivision (b) only if all other sanctions have been exhausted." Preclusion sanctions are appropriate only for the most egregious discovery abuse; specifically, such sanctions should be reserved for those cases in which the record demonstrates a willful and deliberate violation that was motivated by the desire to obtain a tactical advantage at trial. People v. Edwards,17 Cal.App.4th 1248, 1263, 22 Cal.Rptr.2d 3 (1993). Prohibiting testimony of a witness is not an appropriate discovery

sanction in a criminal case absent a showing of significant prejudice and willful conduct.  People

v. Gonzales, 22 Cal.App.4th 1744, 1758-1759, 28 Cal.Rptr.2d 325 (1994).

The sanctions set forth in § 1054.5 are applicable to violations of § 1054.7.  See

People v. Hammond, 22 Cal.App.4th 1611, 1620-1621, 28 Cal.Rptr.2d 180 (1994).

As noted by respondent, the prosecution's motion itself was not untimely.  That

the motion was filed less than thirty days before trial does not  necessarily mean that the

prosecution had not previously disclosed the victim of that prior rape as a victim to defense

counsel.

In any event, assuming that the prosecution's motion to admit evidence of the

prior conviction was the first notice to defense counsel of the proposed witness and her

testimony, defense counsel could have moved for some type of sanctions.  A request by defense

counsel to preclude the witness would most likely have been denied as there was no evidence of

a willful or deliberate violation of the timely disclosure rule.  While trial counsel could have

moved for a continuance to investigate the witness, it appears she was well aware of the facts

surrounding the prior conviction.  For that reason, a continuance would not have been necessary.

It appears that, at best, counsel could have obtained a jury instruction telling the jury that the

prosecution had failed to comply with the rules regarding timely disclosure of witnesses.  Had the

jury received this instruction, it is not likely that it would have changed the outcome of

petitioner's trial, as there was no dispute that petitioner had suffered the prior conviction.  On

cross-examination, petitioner did not deny the prior conviction.  RT at 330-331.  For these

reasons, the court does not find that petitioner was prejudiced by counsel's failure to object to the

prosecution's motion to admit evidence, including calling the victim, of his prior rape conviction,

as untimely.

Having conducted a de novo review of the record, the court finds that the instant

claim is without merit and should be denied.

\\\\\

C.  State Court Rulings

*Legal Standard*

A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts.  Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is unavailable for alleged error in the interpretation or application of state law.  Middleton v. Cupp, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972).

The Supreme Court has reiterated the standards of review for a federal habeas court.  Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475 (1991).  In Estelle v. McGuire, the Supreme Court reversed the decision of the Court of Appeals for the Ninth Circuit, which had granted federal habeas relief.  The Court held that the Ninth Circuit erred in concluding that the evidence was incorrectly admitted under state law since, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions."  Id. at 67-68, 112 S. Ct. at 480.  The Court re-emphasized that "federal habeas corpus relief does not lie for error in state law."  Id. at 67, 112 S. Ct. at 480, citing Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092, 3102 (1990), and Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75 (1984) (federal courts may not grant habeas relief where the sole ground presented involves a perceived error of state law, unless said error is so egregious as to amount to a violation of the Due Process or Equal Protection clauses of the Fourteenth Amendment).

The Supreme Court further noted that the standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)."  Id. at 68, 112 S. Ct. at 480.  The Court also stated that in order for error in the state trial proceedings to reach the level of a due process violation, the error had to be one involving "fundamental fairness," Id. at 73, 112 S. Ct. at 482, and that "we 'have

27

defined the category of infractions that violate "fundamental fairness" very narrowly.'" Id. at 73,

112 S. Ct. at 482. Habeas review does not lie in a claim that the state court erroneously allowed

or excluded particular evidence according to state evidentiary rules. Jammal v. Van de Kamp,

926 F.2d 918, 919 (9th Cir. 1991).

*Trial Court Erred in Admitting Expert Opinion that Intercourse was not Consensual*

Petitioner argues that the trial court erred in permitting Nurse Practitioner Vertolli

to testify on grounds that she was not she was not qualified as an expert and she was not qualified

to render an opinion regarding whether the victim's injuries were caused by nonconsensual

intercourse. Petitioner also argues that the trial court erred in permitting Vertolli to testify that in

her opinion, the intercourse was not consensual and that there had been quite a struggle.

Respondent argues that this claim is not exhausted because in his petition for

review filed in the California Supreme Court, petitioner did not argue that this error violated his

rights under the United States Constitution. As stated previously, the undersigned need not

address this argument because the claims are without merit.[5]

---

[5] A claim is fairly presented to the state courts when a petitioner references the specific
federal constitutional guarantee that was violated, as well as a statement of the facts that entitle
the petitioner to relief. Davis v. Silva, 511 F.3d 1005, 1009 (9th Cir.2008) (citing Gray v.
Netherland, 518 U.S. 152, 162-63, 116 S.Ct. 2074 (1996)).
    Respondent argues that in the petition for review, petitioner "perfunctorily asserted that
the result was a violation of the Sixth and Fourteenth Amendments and review should be
granted." Answer, p. 35: 21-23. Respondent argues that this "drive-by" citation does not satisfy
the exhaustion requirements, citing Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005).
    In the petition for review, petitioner also cites four federal cases which he claims stand
for the proposition that an expert may not render opinions on the defendant's guilt in a criminal
case, nor should the jury be exposed to such opinions through police reports or other forms:
Dubria v. Smith, 197 F.3d 390, 400-401 (9th Cir. 1999), United States v. Harber, 53 F.3d 236,
241 (9th Cir. 1995), United States v. Lockett, 919 F.2d 585, 590 (9th Cir. 1990), and United
States v. Kinsey, 843 F.2d 383, 388 (9th Cir. 1988). Respondent's Lodged Document 5, p. 19.
Respondent does not address these cases in the answer.
    The court cases cited by petitioner in the petition for review, although maybe not entirely
on point, and his statement that the introduction of the at-issue testimony violated his Sixth and
Fourteenth Amendment rights, clearly informed that California Supreme Court that he was
raising a federal constitutional claim. As petitioner alleges a violation of his right to due process,
citation in the petition for review to the Fourteenth Amendment was appropriate. For these

As discussed above, the California Court of Appeal rejected petitioner's claim that the trial court should have excluded Vertolli's testimony on grounds that she was not a qualified expert. For the reasons stated by the California Court of Appeal, the undersigned concludes that that the finding that Vertolli was qualified as an expert did not violate fundamental fairness. The denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority.

As discussed above, the California Court of Appeal also rejected petitioner's claims that Vertolli was not qualified to render an opinion regarding whether the victim's injuries were consistent with nonconsensual intercourse. Petitioner had argued that the opinion was beyond her expertise and not supported by any scientific studies. For the reasons stated by the California Court of Appeal, the undersigned finds that Vertolli was qualified to render an opinion regarding the cause of the victim's injuries. The denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority binding on the states.

Petitioner also argues that Vertolli was improperly allowed to testify that *in her opinion*, the intercourse between him and the victim was not consensual and that there had been a struggle. Petitioner argues that Vertolli should only have been allowed to offer an opinion regarding whether the victim's injuries were consistent with nonconsensual intercourse. The California Court of Appeal denied this claim as follows:

Background

Vertolli testified regarding her examination of the victim the evening of the assault. She recounted the abrasions, lacerations, and redness she observed on various parts of the victim's body.

During Vertolli's testimony, the prosecutor asked: "In your experience, would somebody have injuries such as what [the victim] had if she had consensual

reasons, the undersigned would reject respondent's argument that the instant claim is not exhausted.

intercourse? [¶] A. It's possible. [¶] Q. In your experience, is it possible that [if] somebody had used a condom, [the victim] would have these injuries and it not be consensual?"

Defense counsel objected, arguing a lack of foundation. The court stated: "She is an expert and qualified as such. [¶] You may answer." The prosecution repeated the question and Vertolli answered: "I have an opinion that it was not consensual." Vertolli further testified that her opinion was based on the number of injuries to the victim's body.

The prosecution then asked: "In addition to the injury you described in the vagina; is that correct? [¶] A. That's evidence she had been penetrated. And the evidence of the injuries to her body, I was convinced there was quite a struggle."

Defense counsel objected, arguing the testimony was improper opinion, and asked that Vertolli's response be stricken. The court overruled the objection and denied the motion to strike, noting, "I'm sure you will go into that on your cross-examination."

The prosecution asked: "Ms. Vertolli, when somebody has consensual sex, would you expect the woman would be injured?" Defense counsel objected and the court again overruled the objection. Vertolli responded: "Not usually." The prosecution then asked: "Why is that?" Vertolli responded: "Well, there's lots of things that happen to the anatomy that minimize injury to the genital area. The vaginal area, introitus, the opening, vaginal area, there's changes that happen when you are aroused and agreeing consensual. [¶] And the injuries on the rest of her body are in unusual places. She had injuries on the back of her buttocks, four-scratches that are not normally consensual."

During a break, defense counsel renewed his objections to Vertolli's testimony. Defense counsel argued Vertolli could not testify as to the mental state of another person regarding whether that person was consenting to sexual intercourse. Vertolli could only testify, defense counsel argued, as to whether the injuries were consistent or inconsistent with consensual sex.

The trial court agreed defense counsel had raised a "salient point" and sustained the objection. The trial court instructed the prosecution to clarify Vertolli's testimony when the jury returned.

When trial resumed, Vertolli conceded she could not determine what someone else had been thinking. The prosecution asked Vertolli whether she had formed an opinion, based on her clinical findings of the injuries and history provided by the victim, as to whether the injuries were "[c]onsistent or not consistent with consensual sex." Vertolli replied: "My, from what I observed and from what I was told, I concluded that she had had vaginal penetration with a struggle, with-with injury."

*****

Finally, defendant argues Vertolli intruded upon the province of the jury when she testified that, in her opinion, the sexual intercourse was not consensual and there

30

had been "quite a struggle ." The People contend the trial court cured any possible error by requiring Vertolli to clarify her testimony.

We agree. After Vertolli's initial testimony, the trial court agreed with defense counsel that the nurse practitioner could not testify as to what was in the victim's mind regarding whether she consented to sexual intercourse. The trial court instructed the prosecution to clarify Vertolli's testimony. Subsequently, Vertolli testified she could not "get into somebody's mind." Vertolli then gave her opinion, based on her clinical findings and the history given by the victim, that the victim "had vaginal penetration with a struggle, with-with injury."

Defendant claims Vertolli's clarification was also inadmissible as improper expert opinion on guilt and credibility. We disagree.

An expert may not testify as to the truthfulness of a witness, the guilt or innocence of the defendant, or to the subjective knowledge or intent of the defendant. (*People v. Coffman & Marlow* (2004) 34 Cal.4th 1, 82; People v. Torres (1995) 33 Cal .App.4th 37, 46-48; *People v. Killebrew* (2002) 103 Cal.App.4th 644, 658.) An expert may offer an opinion related to a subject sufficiently beyond common experience that the expert would assist the trier of fact "[b]ased on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion." (Evid. Code, § 801.)

Here, Vertolli's clarified opinion testimony related to her expertise as a SANE nurse. Vertolli testified that based on her clinical findings and interview of the victim, a struggle and injury accompanied the sexual intercourse between the victim and defendant. Vertolli did not opine as to the victim's or defendant's veracity, defendant's guilt, or to the subjective knowledge of either the victim or defendant. Vertolli's clarified testimony was not improper expert testimony.

Respondent's Lodged Document 4, pp. 16-21.

The undersigned is hard pressed to find the error ascribed to the expert nurse. While certainly direct evidence of consent or non-consent could only be acquired from the person/victim with those thoughts, there may be objective criteria concerning the probable lack of consent, e.g., bruising, tears, blood, etc. which would enable an expert to have an admissible opinion that sex was non-consensual. It appears to the undersigned that such objective criteria were precisely the things to which the nurse testified when giving her opinion. In any event, the undersigned agrees with the California Court of Appeal that the trial court cured this "error" by requiring Vertolli to clarify her testimony. Vertolli's testimony that her opinion regarding

whether the intercourse was consensual was based on her clinical findings and that she could not "get into somebody's mind" cured the error of her earlier testimony. RT at 166-167. No violation of fundamental fairness occurred. The denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority.

> *Trial Court Erred in Ruling That He Could Not Impeach Victim with her Refusal to Speak to the Defense*

Petitioner argues that the trial court erred in ruling that he could not impeach the victim with her refusal to speak to the defense.

The California Court of Appeal, the last state court to issue a reasoned decision addressing this claim, denied this claim as follows:

> During cross-examination, defense counsel asked the victim if she recalled counsel's visit to her home. The prosecution objected and, out of the jury's presence, stated he had not received any discovery about such a contact. The trial court sustained the objection, a ruling defendant contends is an abuse of discretion.

> The People concede the trial court erred in excluding evidence of the victim's refusal to speak with defense counsel, but argue defendant has failed to show how the error prejudiced him. We agree.

> A witness may decline to speak with a party's representative. However, "[a] witness's refusal to talk to a party is relevant to that witness's credibility because it shows the possibility of bias against that party." ( *People v. Hillhouse* (2002) 27 Cal.4th 469, 494; *People v. Pitts* (1990) 223 Cal.App.3d 606, 872-873.)

> Defendant does not argue that the trial court's exclusion of this evidence prejudiced him.FN2 We cannot find the admission of this evidence would have changed the outcome of the case. The victim testified in great detail about the rape, identifying defendant as her assailant. There is no reason to believe the victim's testimony that she refused to speak with defense counsel would have dissuaded the jury from determining that defendant was guilty of the rape charge.

> FN2. He argues any prejudice was cumulative.

Respondent's Lodged Document 4, pp. 27-28.

For the reasons stated by the California Court of Appeal, the undersigned finds that the trial court's ruling prohibiting him from impeaching the victim with her refusal to speak with the defense did not violate fundamental fairness. While the ruling may have been in error, it

is not likely that the outcome of the trial would have been different had the jury been made aware of the victim's refusal to speak to the defense. While the refusal of a witness to speak to the defense may undermine their credibility, the undersigned finds that the credibility of a rape victim is not significantly undermined by her refusal to speak to the defense. The denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority.

Petitioner also suggests that the trial court's refusal to allow him to cross-examine the victim regarding her refusal to speak to the defense violated the Confrontation Clause. Because this claim was not presented to any state court, this court conducts a de novo review of this claim.

The Supreme Court has explained that the right of confrontation "means more than being allowed to confront the witness physically," but rather "[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." Davis v. Alaska, 415 U.S. 308, 315-16, 94 S.Ct. 1105 (1974) (internal quotation marks and citation omitted). The Confrontation Clause does not prevent a trial judge from imposing "reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431 (1986).

The Supreme Court has held that a defendant's Confrontation Clause rights have been violated when he is "prohibited from engaging in otherwise appropriate cross-examination ... and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' " Id. at 680, 106 S.Ct. 1431 (quoting Davis, 415 U.S. at 318, 94 S.Ct. 1105). "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." Id.

Accordingly, the defendant has met his burden when he has shown that "[a] reasonable jury might have received a significantly different impression of [a witness'] credibility had ... counsel been permitted to pursue his proposed line of cross-examination." Id.

For the reasons discussed above, the undersigned does not find that the jury would have formed a reasonably significant different impression of the victim's credibility had it been made aware of her refusal to speak with the defense. As stated above, while the refusal of a witness to speak with the defense may, in many instances, demonstrate bias, the refusal of a rape victim to speak to the defense is different. The refusal of a rape victim to speak to a representative of the person accused of raping her does not demonstrate a "prototypical form of bias." Rather, it would not be surprising for a victim of such a traumatic event to not wish to speak to someone representing her attacker. A refusal to speak with the defense, under these circumstances, does not demonstrate bias, or at least, any substantial bias. For this reason, the undersigned finds no Confrontation Clause violation.

> *Trial Court Erred in Not Allowing him to Impeach Victim with Former Boyfriend's Testimony Regarding her Promiscuity*

Petitioner argues that the trial court erred in refusing to allow him to impeach the victim with her former boyfriend's testimony regarding her promiscuity. The California Court of Appeal denied this claim as follows:

Evidence of the Victim's Prior Sexual Conduct

The prosecution moved to exclude evidence of the victim's prior sexual conduct. Defense counsel had obtained information from Mr. Peterson, the victim's former boyfriend, about the victim's willingness to engage in sexual behavior early in their relationship. Peterson also recalled an incident in which the victim had sexual intercourse with another person in front of him. This evidence would be relevant, defense counsel argued, if the victim testified she would not have had sexual intercourse on her first date with defendant. The trial court granted the prosecution's motion, subject to further review.

After the victim testified, defense counsel again raised the issue. Defense counsel noted the victim testified she felt uncomfortable "partying" with defendant, since she only did that with close friends. The victim also testified she did not intend to become intimate with defendant and felt "very vulnerable." Defense counsel again

1    offered evidence that "for many years" the victim had consumed alcohol and had
2    sex with men with whom she was not on a date. Defense counsel argued the
     victim had opened the door with her own testimony.

3    The prosecution opposed the testimony under Evidence Code sections 1103,
     subdivision (c)(1) and 782. The trial court found "the door" had not been opened
4    and offered to review the request at the conclusion of the victim's
     cross-examination.
5
     Defendant argues the trial court erred in refusing to admit evidence about the
6    victim's prior sexual experience. The Attorney General contends the evidence was
     inadmissible under Evidence Code sections 1103 and 782.
7
     Evidence Code section 1101, subdivision (a) provides that in trials of sexual
8    offenses, evidence of specific instances of the complaining witness's sexual
     conduct is not admissible by the defendant in order to prove consent by the
9    complaining witness. However, under Evidence Code section 1103, a victim's
     prior sexual conduct may be admissible to attack the credibility of the
10   complaining witness. Evidence Code section 782 requires the defendant to file a
     written motion explaining the relevance of the evidence of sexual conduct in
11   attacking the victim's credibility.

12   As the People point out, defendant failed to comply with section 782, even after
     the prosecution pointed out the necessity of a written motion during oral argument
13   on the issue. By failing to comply with section 782, defendant has forfeited the
     issue. ( *People v. Sims* (1976) 64 Cal.App.3d 544, 553-554.)
14
     Defendant's argument fails in any event. Defendant makes far too much of the
15   victim's testimony. In sum, the victim simply recalled a telephone conversation in
     which she expressed to defendant her discomfort at his suggestion that they go
16   "partying." Later, after defendant started pulling her pants down and strangling
     her, she had a "vulnerable feeling." Under defendant's theory, any testimony by
17   the victim suggesting that she had no plans or desire to engage in sex with him
     would have "opened the door" to testimony about her promiscuity. If that were the
18   law, then investigations into a victim's sexual history would become standard
     procedure in the defense of every rape prosecution on the chance that evidence of
19   promiscuous behavior could be used for impeachment if a victim hinted at a
     chaste background. The court did not err in excluding such testimony. For that
20   reason, defendant's related assertion of ineffective assistance of counsel for failing
     to preserve the issue also fails.
21
22   Respondent's Lodged Document 4, pp. 28-30.

23          Respondent argues that while this claim is unexhausted because it was not

24   presented to the California Supreme Court, it is procedurally barred based on the ruling by the

25   California Court of Appeal that petitioner waived this claim as a result of counsel's failure to file

26   a written motion.

A procedural bar may also be applied to unexhausted claims where state procedural rules make a return to state court futile.  Coleman v. Thompson, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546 (1991) (claims are barred from habeas review when not first raised before state courts and those courts "would now find the claims procedurally barred").  In the instant case, petitioner's claim challenging admission of the victim's prior promiscuous conduct is barred from review in state court pursuant to Cal. Evid. Code § 782, which requires a request for admission of such evidence to be made by written motion.  For that reason, it would be futile for petitioner to return to state court in order to exhaust this claim.  Accordingly, the undersigned considers whether the claim is procedurally barred.

While the California Court of Appeal went on to address the merits of petitioner's claim, this "alternative" ruling does not vitiate the independent state procedural bar.  Harris v. Reed, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038 (1989); Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir.1992) (state supreme court found ineffective assistance of counsel claims "barred under state law," but also discussed and rejected the claims on the merits, en banc court held that the "on-the-merits" discussion was an "alternative ruling" and the claims were procedurally defaulted and barred from federal review).

Based on concerns of comity and federalism, federal courts will not review a habeas petitioner's claims if the state court decision denying relief rests on a state law ground that is independent of federal law and adequate to support the judgment.  Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546, 2554 (1991); Harris v. Reed, 489 U.S. 255, 260-62, 109 S. Ct. 1038 (1989).  Generally, the only state law grounds meeting these requirements are state procedural rules.  However, the procedural basis of the ruling must be clear.  Ambiguous reference to procedural rules is insufficient for invocation of procedural bar.  Calderon v. United States District Court (Bean), 96 F.3d 1126, 1131 (9th Cir. 1996).  Similarly, where the procedural and merits analysis are intermixed, it cannot be said that the procedural bar is independent of federal law, i.e., there is no plain statement of reliance on procedural bar.  Harris v. Reed, supra.

If there is an independent and adequate state ground for the decision, the federal court may still consider the claim if the petitioner demonstrates: (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice. <u>Harris</u>, 489 U.S. at 262, 109 S. Ct. at 1043. The existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. <u>McCleskey v. Zant</u>, 499 U.S. 467, 493-94, 111 S. Ct. 1454, 1476 (1991). Examples of cause include showings "that the factual or legal basis for a claim was not reasonably available to counsel," "that some interference by officials made compliance impracticable," or "of ineffective assistance of counsel." <u>Murray</u>, 477 U.S. at 488, 106 S. Ct. at 2645. Prejudice is difficult to demonstrate:

> The showing of prejudice required under <u>Wainwright v. Sykes</u> is significantly greater than that necessary under "the more vague inquiry suggested by the words 'plain error.'" <u>Engle</u>, 456 U.S., at 135, 102 S.Ct., at 1575; <u>Frady</u>, <u>supra</u>, 456 U.S., at 166, 102 S.Ct., at 1593. <u>See also</u> <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). The habeas petitioner must show "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Frady</u>, <u>supra</u>, at 170, 102 S.Ct., at 1596.

<u>Murray v Carrier</u>, 477 U.S. at 493-494, 106 S. Ct. at 2648 (1986). Although different phraseology is used in the default context from that used in the ineffective assistance of counsel prejudice inquiry, as stated above, the ultimate application of the two prejudice inquiries is essentially similar – that is, whether the prejudice is sufficient to have undermined the reviewer's confidence in the result of the trial.

"Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority

demonstrating inconsistent application of the rule.  Once having done so, ... it is the State who must bear the burden of demonstrating that the bar is applicable."  Bennett v. Mueller,  322 F.3d 573, 586 (2003).

In the instant case, respondent pled the existence of an independent and adequate procedural bar.  For that reason, the burden shifted to petitioner to assert specific factual allegations demonstrating the inadequacy of the state procedure.  Petitioner does not address this issue in the traverse.  Accordingly, petitioner's claims are procedurally barred unless he demonstrates (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice.  Harris, 489 U.S. at 262, 109 S. Ct. at 1043.

In relevant part, the victim testified:

A: He started strangling me, putting his hands around my neck, obstructing my air, freaking me out, causing me to pain.

Q: Before that happened, did he go back up to your chest before and then back to your pants?

A: Yeah. It was sort of back and forth for awhile.  I mean, wherever he, wherever I wasn't fending off at the moment, he sort of took the, you know, the vulnerable area.  My hands are only one, two–spot at a time.  Trying to get my pants back up and done again.
I'm not–sort of a vulnerable feeling to have a stranger taking your pants. Undoing your pants.  So I was sort of buttoning my pants up as he was trying to get under my shirt agin.

RT at 52.

Q: You had, you indicated that when Mr. Wolcott and you were talking about what you wanted to do that day, that he asked you if you wanted to party; is that correct?

A: Yes.

Q: And you said that that made you uncomfortable because that's something you only do with your close friends; is that correct?

A: I said that going out to party wasn't something that I would feel comfortable doing with somebody I just met on-line without having any idea about who they were, it was being a primary activity that we would be going out to pursue.

Q: What's your definition of "partying"?

A: Usually either going to a party, or going to an establishment where drinking and, you know, dancing and activities such as that takes place. Not just purely, you're not–you are just, I mean, it's kind of a fine line between hanging out and partying. But, you know, it's usually done in an establishment with other people and not just, you know, two people. I mean, a party isn't two people or three people.

Q: So you didn't feel comfortable going to an establishment where other people were to have drinks with Mr. Wolcott, but you felt perfectly comfortable going to a secluded park?

***

Q: Your definition of "partying" is going to an establishment where there are other people or a building where there are other people drinking, correct?

A: Or socializing, I mean, yes.

Q: What do you call going to a secluded park with alcohol with someone else?

A: I was not necessarily aware of how secluded the spot was. I mean, I had been to one part of the park. I can't say I was familiar with that area of the park at all.

Q: Do you call that partying?

A: No.

RT at 75-76.

Petitioner argues that the victim's testimony, set forth above, suggested that she did engage in promiscuous behavior. Petitioner argues that evidence that she had sex in front of her ex-boyfriend with another man would have undermined her credibility. The above testimony about partying is simply insufficient to permit instances of alleged promiscuous conduct to be introduced to attack the credibility of a victim/witness.

The undersigned agrees with the California Court of Appeal that the victim's testimony that she felt vulnerable having a stranger take down her pants did not open the door to evidence of her previous promiscuous behavior. By testifying that she felt vulnerable, the victim did not represent that she did not engage in promiscuous behavior.

\\\\\

The victim's testimony that she did not feel comfortable going to a bar with someone she just met but was comfortable going to a park at night to drink with them was confusing. Regardless, this testimony also did not open the door to evidence of her previous promiscuous behavior.

Again, the undersigned has reviewed the testimony of the victim in this case, and by no stretch of the imagination can it be said that testimony was introduced which in any way could be characterized as: "I never have sex on the first date," or "I don't do such things as have sex with persons I hardly know."

For these reasons, the undersigned finds that petitioner has not demonstrated a violation of fundamental fairness. Accordingly, this claim should be denied on grounds that it is procedurally barred.

*Trial Court Erred in Refusing to Allow Impeachment of Victim with her Prior Misdemeanor Conviction*

Petitioner argues that the trial court erred in refusing to allow him to impeach the victim with her prior misdemeanor conviction. Petitioner did not raise this claim on direct appeal or in the habeas petition filed in the Superior Court. Accordingly, the court conducts a de novo review of this claim.

The prosecutor moved to exclude evidence of this prior conviction. RT at 3-4. Trial counsel stated that she did not intend to introduce evidence of this prior conviction unless it became relevant. RT at 4. The trial court granted the prosecutor's motion in limine to exclude this evidence subject to reconsideration. RT at 4. Because trial counsel did not seek reconsideration, petitioner's claim that the trial court improperly excluded this evidence is without merit. Accordingly, this claim should be denied.

\\\\\
\\\\\
\\\\\

*Trial Court Erred in Refusing to Allow Petitioner to Call an Expert to Testify Regarding Significance of the Victim's Blood Alcohol Level*

Petitioner argues that the trial erred in refusing to allow him to call an expert to testify regarding the significance of the victim's blood alcohol level. The California Court of Appeal denied this claim as follows:

III. Evidence of Blood Alcohol Level

Defendant contends the trial court erred in excluding evidence that it is illegal to drive with a blood alcohol level of .08 percent or more. According to defendant, the court should either have taken judicial notice of the relevant statute or allowed expert testimony on the issue. We disagree.

Background

As the Attorney General acknowledges, both defendant and the victim were drinking prior to the incident. The victim testified she was under the influence of alcohol. However, the victim testified: "... I don't feel like I was intoxicated in some sense that I would lose any incredibly important detail from the incident." The victim described her condition as "a slight buzz" but "not drunk in any sense."

Detective Sandoval testified the victim's speech was slurred and he smelled alcohol on her breath when he spoke with her after the incident. He requested alcohol tests for the victim and defendant. The parties stipulated that the tests revealed the victim's blood alcohol level was 0.11 percent and defendant's was zero.

Defendant sought to introduce evidence that it is illegal for anyone with a blood alcohol level above 0.08 percent to drive a vehicle. Defendant filed a motion requesting the court to take judicial notice of the relevant statute, Vehicle Code section 23152, subdivision (b). The court denied the motion.

During trial, defense counsel sought to introduce testimony of a witness, Ed Smith, "to give a context to the .11." According to defense counsel, judicial notice of the Vehicle Code or testimony pertaining to blood alcohol content and driving impairment was necessary to place the victim's blood alcohol level in context.

The court denied the request, noting: "There is really no issue as to intoxication. The victim admitted she was intoxicated. She admitted it more than once. She admitted that she was drunk. She later qualified what the level of intoxication, and I believe made reference to being not that drunk. Both counsel went into this issue on direct as well as cross-examination. [¶] I don't feel Mr. Smith's testimony would add anything. In fact, would probably consume an undue amount of time, as well as open the door to other issues that the jury could be misled on."

\\\\\

41

Discussion

A court may take judicial notice of "[t]he decisional, constitutional, and statutory law of any state of the United States and the resolutions and private acts of the Congress of the United States and of the Legislature of this state." (Evid.Code, § 452, subd. (a).) However, a court may only notice material relevant to the case. ( *American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 441, fn. 7.)

In addition, the trial court possesses broad discretion to admit or exclude expert testimony. To be relevant and admissible, the expert's testimony must be related to a subject sufficiently beyond common experience that the expert's opinion would assist the trier of fact. We review a court's ruling on the admissibility of expert testimony for an abuse of discretion. ( *People v. Valdez* (1997) 58 Cal.App.4th 494, 506; Evid.Code, § 801, subd. (a).)

Defendant argues the court abused its discretion in excluding the evidence of the statutory prohibition against driving with a blood alcohol content above .08 percent and in excluding expert testimony that would have placed the victim's blood alcohol test results of .11 percent in context. The Attorney General counters that the trial court properly excluded the evidence as both irrelevant and time consuming.

The court, in excluding the evidence, noted that the victim had admitted she was intoxicated. The court also acknowledged that the victim later qualified her level of intoxication and "I believe made reference to being not that drunk." The court also stated both parties had extensively questioned the victim about her intoxication during trial.

Defendant takes issue with the trial court's recollection of trial testimony, arguing the victim "specifically denied she had been intoxicated. The trial court's misrecollection of her testimony undermines entirely the court's 'probative value' analysis and its [Evidence Code] section 352 'balancing.' " Defendant claims the victim never admitted being intoxicated.

Defendant is mistaken. The victim admitted being under the influence and admitted drinking prior to the rape. The victim testified she was frightened, so she did not really feel intoxicated. She also stated she did not believe her thinking was impaired by alcohol, because they had not been drinking for very long before the rape. Although the victim admitted she was not completely sober, she stated she was not so intoxicated that she would have lost any important details. The trial court did not mischaracterize the victim's testimony in denying defendant's request.

Nor did the trial court exercise its discretion in an arbitrary, capricious, or absurd manner resulting in the miscarriage of justice. ( *People v. Rodriquez* (1999) 20 Cal.4th 1, 9-10 ( *Rodriquez* ).) The court found that both judicial notice of the blood alcohol content for drunk driving and expert testimony on blood alcohol content would not add anything to the testimony at trial. We agree.

The victim testified extensively about her alcohol consumption, admitting she was

under the influence but denying it impaired her memory. Officer Sandoval testified he smelled alcohol on the victim's breath and her speech was slightly slurred when he interviewed her the night of the rape. Sandoval testified that given his training and experience, he believed the victim was under the influence of alcohol. Defendant testified he did not pay attention to the victim's level of sobriety during the incident, but stated the victim alone drank most of the bottle of rum. Defendant took only a few sips. Defense counsel reiterated the victim's alcohol consumption during closing argument, pointing out her blood alcohol content and stating: "She drank the whole bottle. She should be [.11]."

Given the extensive discussion of the victim's drinking, the court determined any introduction of the statutory definition of drunk driving or expert testimony would consume an undue amount of time and open the door to potentially confusing side issues. The ruling was not arbitrary or capricious and did not exceed the bounds of reason. ( *Rodriguez*, supra, 20 Cal.4th at pp. 9-10.)

Respondent's Lodged Document 4, pp. 22-26.

Petitioner argues that the court will recognize that a .11 blood alcohol level four or five hours after the events suggests a .15 (or higher) blood alcohol level. Petitioner argues that a .15 blood alcohol level suggests severe intoxication which a jury would not know. Petitioner argues that his expert could have testified to this fact.

The Court of Appeals analysis begs the issue somewhat – the issue was not merely one of whether the witness could remember accurately the events of the rape. It is undisputed that petitioner was under the influence of alcohol; the real question is what did that have to do with the consent, or lack thereof, of the victim. To a large extent, the jury was left to figure out this question on its own. Respondent assumes that being under the influence to a degree of .11 or .15 has nothing to do with whether a person may consent to sex when she would not otherwise do so, i.e., that alcohol does not release one's inhibitions at all. Petitioner makes the simplistic assumption that if one's driving abilities are impaired, one necessarily makes decisions to have sex that they would not otherwise make, *or know that they were making*. Petitioner says nothing at all about the danger of expert testimony, i.e., that the victim's condition was so impaired, she was unable to consent, and that petitioner was simply taking advantage of a planned, inebriation situation. See Cal. Penal Code § § 261(a)(13), 289(e).

\\\\\

Petitioner presents nothing here about what his expert was prepared to testify about at trial regarding the penultimate question. All counsel could say at trial is that she desired to present the expert testimony for "context." RT 278-283. But how could the expert do so? If he did, he would be committing the same type of error attributed to Nurse Vertolli, i.e., he would be testifying that a certain level of alcohol was consistent with the victim's state of mind releasing her inhibitions "just enough" so that she was saying that she was not consenting even though she actually thought she was. Petitioner's argument is akin to stating that the victim was thinking "yes, yes," while she actually was saying, "no, no." An expert could not possibly testify to such convolution. See also, People v. Daniels, 176 Cal. App. 4th 304, 320, 97 Cal. Rptr. 3d 659 (2009) (expert not permitted to testify to speculative inferences). In addition, the undersigned entirely agrees with People v. Stitely, 35 Cal. 4th 514, 550, 26 Cal. Rptr.3d 1, 29-30 (2005):

> The trial court also did not abuse its broad discretion to the extent it excluded the proffered evidence under Evidence Code section 352. (*See People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10, 82 Cal.Rptr.2d 413, 971 P.2d 618 [such rulings receive great deference on appeal].) Defendant essentially sought to prove that people act under the influence of alcohol in ways they do not ordinarily behave. This is common knowledge. Hence, the proffered evidence would have had little impact on lay jurors, who presumably know as well as any expert how to assess the effect of alcohol on impulse and inhibitions. (*See People v. Seaton* (2001) 26 Cal.4th 598, 654-655, 110 Cal.Rptr.2d 441, 28 P.3d 175 [upholding exclusion of expert testimony on how defendant's blood-alcohol level affected criminal intent since evidence "contained little if any information a layperson would not know"].)

Criminal defendants have a constitutional right to present relevant evidence in their own defense. See Crane v. Kentucky, 476 U.S. 683, 690, 106 S.Ct. 2142 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (internal quotation marks omitted). The Supreme Court has indicated that a defendant's right to present a defense stems both from the right to due process provided by the Fourteenth Amendment, see Chambers v. Mississippi, 410 U.S. 284, 294, 93 S.Ct. 1038 (1973), and from the right "to have compulsory process for obtaining witnesses in his favor" provided by the Sixth Amendment, see Washington v. Texas, 388 U.S. 14, 23, 87 S.Ct. 1920 (1967)

(explaining that the right to compulsory process would be meaningless if the defendant lacked the right to use the witnesses whose presence he compelled).

However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions," such as evidentiary and procedural rules. United States v. Scheffer, 523 U.S. 303, 308, 118 S.Ct. 1261 (1998). In fact, "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," id., and the Supreme Court has indicated its approval of "well-established rules of evidence [that] permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury," Holmes v. South Carolina, 547 U.S. 319, 326, 126 S.Ct. 1727 (2006). Evidentiary rules do not violate a defendant's constitutional rights unless they "infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." Id. at 324, 126 S.Ct. 1727 (alteration in original) (internal quotation marks omitted); see also Scheffer, 523 U.S. at 315, 118 S.Ct. 1261 (explaining that the exclusion of evidence pursuant to a state evidentiary rule is unconstitutional only where it "significantly undermined fundamental elements of the accused's defense"). In general, it has taken "unusually compelling circumstances ... to outweigh the strong state interest in administration of its trials." Perry v. Rushen, 713 F.2d 1447, 1452 (9th Cir.1983).

The denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

In the petition, petitioner suggests that the trial court's refusal to allow him to call his own alcohol expert violated his constitutional right to present a defense. Petitioner raised this claim before the California Court of Appeal, the last state court to issue a reasoned decision addressing this claim.

\\\\\

C. <u>Trial Court Erred in Refusing to Give CALJIC 10.65</u>

Petitioner argues that the trial court erred by refusing to give CALJIC 10.65.  A challenge to jury instructions does not generally state a federal constitutional claim.  <u>See</u> <u>Gutierrez v. Griggs</u>, 695 F.2d 1195, 1197 (9th Cir. 1983); <u>see</u> <u>also</u> <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985).  Habeas corpus is unavailable for alleged error in the interpretation or application of state law.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 112 S. Ct. 475 (1981); <u>see</u> <u>also</u> <u>Lincoln v. Sunn</u>, 807 F.2d 805, 814 (9th Cir. 1987); <u>Givens v. Housewright</u>, 786 F.2d 1378, 1381 (9th Cir. 1986).  The standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." <u>Estelle v. McGuire</u>, 502 U.S. at 68, 112 S. Ct. at 480.  In order for error in the state trial proceedings to reach the level of a due process violation, the error had to be one involving "fundamental fairness." <u>Id.</u> at 73, 112 S. Ct. at 482.  The Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly.  <u>Id.</u> at 73, 112 S. Ct. at 482.

Where what is at issue is the failure to give an instruction, petitioner's burden is "especially heavy" because it has been held that "[a]n omission or an incomplete instruction is less likely to be prejudicial than a misstatement of the law."  <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155, 97 S. Ct. 1730, 1737 (1977).  Moreover, a trial judge need not instruct on a defense which would be inconsistent with petitioner's theory of the case.  <u>Bashor v. Risley</u>, 730 F.2d 1228, 1240 (9th Cir. 1984).  Failure to give a jury instruction under these circumstances will not amount to a due process violation.  <u>Id.</u>

The burden upon petitioner is greater yet in a situation where he claims that the trial court did not give an instruction <u>sua</u> <u>sponte</u>.  To the extent that petitioner rests his claim on a duty to give an instruction <u>sua</u> <u>sponte</u> under rules of state law, petitioner has stated no federal claim.  Indeed, in the failure to give a lesser included offense instruction context, the Ninth Circuit has flatly held in non-capital cases that the failure to give the instruction states no federal

claim whatsoever.  James v. Reece, 546 F.2d 325, 327 (9th Cir. 1976).  Therefore, in order to violate due process, the impact on the proceeding from failure to give an instruction sua sponte must be of a very substantial magnitude.

Furthermore, the Supreme Court has recently held that there is no unreasonable application of federal law where a state appellate court decided that a jury instruction's single incorrect statement of the "imperfect self-defense" standard did not render the instruction reasonably likely to have misled the jury.  Middleton v. McNeil, 541 U.S. 433, 124 S. Ct. 1830 (2004).

The California Court of Appeal denied the instant claim for the following reasons:

I. Instructional Error

Defendant argues the court erred in failing to instruct that a reasonable, though mistaken, belief that a victim consented to sexual intercourse is a defense to rape. The Attorney General contends there was no evidence of equivocal conduct by the victim that could have led defendant to mistakenly believe she consented to sexual intercourse. We agree with the Attorney General.

Background

At trial, defendant did not request, and the trial court did not give, CALJIC No. 10.65. CALJIC No. 10.65 states, as pertinent in the present case: "In the crime of unlawful forcible rape criminal intent must exist at the time of the commission of the [alleged crime]. [¶] There is no criminal intent if the defendant had a reasonable and good faith belief that the other person voluntarily consented to engage in sexual intercourse. Therefore a reasonable and good faith belief that there was voluntary consent is a defense to such a charge. [¶] However, a belief that is based upon ambiguous conduct by an alleged victim that is the product of conduct by the defendant that amounts to force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person of the alleged victim or another is not a reasonable good faith belief. [¶] If after a consideration of all of the evidence you have a reasonable doubt that the defendant had criminal intent at the time of the accused sexual activity, you must find him not guilty of the crime."

CALJIC No. 10.65 is also known as the " Mayberry instruction," after People v. Mayberry (1975) 15 Cal.3d 143 ( Mayberry ). The Mayberry defense is a mistake of fact defense.

 "The Mayberry defense has two components, one subjective, and one objective. The subjective component asks whether the defendant honestly and in good faith, albeit mistakenly, believed that the victim consented to sexual intercourse. [Fn. omitted.] In order to satisfy this component, the defendant must adduce evidence of the victim's equivocal conduct on the basis of which he erroneously believed

there was consent. [¶] In addition, the defendant must satisfy the objective component, which asks whether the defendant's mistake regarding consent was reasonable under the circumstances. Thus, regardless of how strongly a defendant may subjectively believe a person has consented to sexual intercourse, that belief must be formed under circumstances society will tolerate as reasonable in order for the defendant to have adduced substantial evidence giving rise to a Mayberry instruction." ( *People v. Williams* (1992) 4 Cal.4th 354, 360-361 ( *Williams* ).)

The defendant bears the burden of showing evidence of "equivocal conduct" on the victim's part that led the defendant to a subjective, good faith belief in consent. ( *Williams*, supra, 4 Cal.4th at p. 361.)

Discussion

Defendant claims that substantial evidence supports giving CALJIC No. 10.65 in the present case. In support, defendant relies on *Williams*.

In *Williams*, the Supreme Court further refined *Mayberry*, considering a scenario where the victim accompanied the defendant to his hotel room, where he raped her. The defendant testified that the victim seduced him. The court found the evidence insufficient since the relevant inquiry under Mayberry is whether the defendant believed the victim consented to have intercourse, not whether she consented to spend time with him. ( *Williams*, supra, 4 Cal.4th at p. 363.) In Williams, the facts created "no middle ground" from which the defendant could argue he reasonably misinterpreted the victim's conduct. ( Id. at p. 362.)

However, defendant takes solace in the court's observation that "a trier of fact is permitted to credit some portions of a witness's testimony, and not credit others. Since a trial judge cannot predict which evidence the jury will find credible, he or she must give the *Mayberry* instruction whenever there is substantial evidence of equivocal conduct that could be reasonably and in good faith relied on to form a mistaken belief of consent, despite the alleged temporal context in which that equivocal conduct occurred." ( *Williams*, supra, 4 Cal.4th at p. 364.)

Defendant argues, via Williams, that substantial evidence of the victim's equivocal conduct supports giving CALJIC 10.65. According to defendant, the victim provided evidence of substantial, consensual sexual conduct with defendant. In addition, the primary area of disagreement between the victim and defendant was " 'temporal,' in the sense that she described a struggle followed by her acquiescence in [an] act of nonconsensual intercourse, while he described an act of consensual intercourse followed by a struggle." Defendant also states the victim was "severely intoxicated," and the jury was entitled to credit portions of defendant's testimony and conclude the victim had not protested as vociferously as she claimed.

The Attorney General argues that a "temporal" conflict is insufficient to support the giving of CALJIC No. 10.65. Instead, defendant must point to substantial evidence of equivocal conduct before he used force. Here, the Attorney General argues, there was no such "equivocal conduct" on the victim's part. We agree.

The jury heard two radically different versions of the events leading up to the

48

rape. Defendant's scenario presented the victim as a willing sexual partner who erupted in anger when he told her he was not interested in a long-term relationship. According to defendant's testimony, the victim never told him not to touch her or refused his sexual advances.

The victim testified that she willingly kissed defendant but began resisting when he tried to touch her breasts. She met his frequent attempts to remove her clothing with further protests. Defendant repeatedly put his hands around her throat and squeezed. After the victim unsuccessfully tried to hit defendant with a bottle, he threw her to the ground. After another unsuccessful attempt to hit defendant, the victim began crying and screaming rape. Feeling trapped, the victim told defendant to get it over with.

Neither of these two starkly different scenarios reveals equivocal conduct by the victim. Instead, as the Attorney General notes, the jury had to determine which of the two witnesses was telling the truth. If the jury believed defendant, it would have concluded the victim consented, not that defendant misunderstood the victim's equivocal words or conduct. If the jury believed the victim, it would have concluded defendant ignored the victim's entreaties and forced her to have sexual intercourse. *Mayberry* permits the jury to conclude both the victim and the accused are telling the truth, but because of equivocal conduct by the victim, the defendant mistakenly believed the victim had consented. Since neither witness's version of events reveals any equivocal conduct by the victim, *Mayberry* does not apply.

We are not persuaded by defendant's arguments to the contrary. Defendant claims the victim was severely intoxicated. However, defendant fails to explain how intoxication translates into equivocal conduct. At trial, defendant testified he did not notice the victim's level of intoxication.

Defendant also argues the victim participated in "substantial" consensual sexual contact with defendant. The victim testified she willingly kissed defendant. Such consensual contact hardly qualifies as "substantial" sexual contact.

Finally, defendant argues the jury was free to accept portions of his testimony as credible. However, as we have explained, neither witness testified as to any equivocal conduct by the victim.

In sum, the evidence did not support an instruction under CALJIC No. 10.65 and the trial court did not err in failing to so instruct.

Respondent's Lodged Document 4, pp. 10-16.

In the instant case, petitioner did not request CALJIC 10.65. See CT 57-67 (refused jury instructions). Because petitioner is claiming that the trial court had a sua sponte duty to give this instruction, he must demonstrate that the impact on his trial from the failure to give it was of a very substantial magnitude.

For the reasons stated by the California Court of Appeal, the undersigned finds that the trial court's "failure" to give CALJIC 10.65 did not have an impact on petitioner's trial of substantial magnitude. As noted by the California Court of Appeal, CALJIC 10.65 would have been appropriate had there been evidence of equivocal conduct by the victim regarding the issue of consent. Instead, according to petitioner, the victim's behavior regarding consent was unequivocal. According to the victim, while she consented to kissing petitioner, she clearly informed petitioner that she was not consenting to sexual intercourse. In other words, neither version of events included equivocal behavior by the victim as to the issue of consent. The trial court did not err by not giving CALJIC 10.65.

The denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

D. Cal. Evidence Code § 1108

Pursuant to Cal. Evid. Code § 1108, the trial court allowed presentation of evidence of petitioner's commission of a prior rape. Petitioner argues that Cal. Penal Code § 1108 is unconstitutional because admission of prior crimes evidence for the purpose of showing criminal propensity alone violates due process. Petitioner also suggests that, assuming Cal. Evid. is constitutional, admission of this evidence violated Cal. Evid. Code § 1108. Petitioner raised these claims in his direct appeal.

Cal. Evid. Code § 1108(a) provides that in a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense is not made inadmissible under § 1101 if the evidence is not inadmissible pursuant to § 352. Cal. Evid. Code § 352 provides that the court, in its discretion, may exclude evidence if its probative value is substantially outweighed by the probability that its admission will a) necessitate undue consumption of time or b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

The United States Supreme Court has never held that prior sexual acts are inadmissible under federal law. Kershaw v. Evans, E.D. Cal. No. 06-1430 MMS, 2009 WL 2515798 at *11 (Aug. 13, 2009), citing Estelle v. McGuire, 502 U.S. 62, 75 n. 2, 112 S.Ct. 475 (1991). Accordingly, petitioner's claim that Cal. Evid. Code § 1108 is unconstitutional is without merit because there is no clearly established Supreme Court authority to support such a claim.

The undersigned next considers whether admission of evidence of petitioner's prior conviction violated federal due process under the circumstance of this case and the prior rape. Cal. Evid. Code § 352 provided adequate due process safeguards to protect petitioner's federal right to a fundamentally fair trial. Id., citing Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871 (1984); United States v. LeMay, 260 F.3d 1018, 1027 (9th Cir. 2001) (upholding constitutionality of a federal rule of evidence that is analogous to Cal. Evid. Code § 1108 so long as the evidence was also subjected to the balancing test of the Federal Rule of Evidence equivalent of Cal. Evid. Code § 353).

In the instant case, the facts of petitioner's prior rape conviction were similar to those of the instant offense and very probative on the issue of intent. In January 2000, the victim of the prior conviction met petitioner at a friend's house. RT at 203-205. She and petitioner chitchatted. RT at 205. The victim left the house at around 9:00 to walk home. RT at 204.

As she was walking, she noticed that petitioner was following her. RT at 205-206. She told him that she needed to go home and turned into a park. RT at 206. As she was walking through the park, petitioner attempted to kiss her, pushing her up against a log cabin in the park. RT at 206. She pushed him away and kept walking down the path. RT at 208. When she got to a bridge, petitioner pushed her against the railing and tried to kiss her again. RT at 208. She pushed him away and started walking again. RT at 209. Petitioner then grabbed her again and pinned her to the railing. RT at 209. Petitioner tried to undo the button on her jeans. RT at 209. When she started yelling, he pushed her to the ground. RT at 209. He then dragged

her to a slope and raped her. RT at 210.

Because of the similarities between the two offenses, the evidence of petitioner's prior rape conviction was very relevant. Admission of this evidence was very probative of petitioner's guilt. For that reason, its admission did not violate Cal. Evid. Code § 1108. For these reasons, the court finds that admission of petitioner's prior rape conviction did not violate his constitutional right to due process.

The denial of petitioner's claims regarding Cal. Evid. Code § 1108 by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority. Accordingly, these claims should be denied.

E. Cumulative Error

Petitioner argues that he is entitled to habeas relief based on cumulative error. Petitioner did not raise this claim in any state proceeding. Accordingly, the court conducts a de novo review of this claim.

"The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair." Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007), citing Chambers v. Mississippi, 410 U.S. 284, 298, 302-03, 93 S.Ct. 1038 (1973) (combined effect of individual errors "denied [Chambers] a trial in accord with traditional and fundamental standards of due process" and "deprived Chambers of a fair trial"). "The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." Id., citing Chambers, 410 U.S. at 290 n. 3, 93 S.Ct. 1038.

"Under traditional due process principles, cumulative error warrants habeas relief only where the errors have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id., quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868 (1974). "Such 'infection' occurs where the combined effect of the errors had a 'substantial and injurious effect or influence on the jury's verdict.'" Id., quoting Brecht v.

Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993) (internal quotations omitted). "In simpler terms, where the combined effect of individually harmless errors renders a criminal defense 'far less persuasive than it might [otherwise] have been,' the resulting conviction violates due process." Id., citing Chambers, 410 U.S. at 294, 302-03, 93 S.Ct. 1038.

As discussed above, the undersigned finds no errors of constitutional magnitude. For that reason, petitioner's claim of cumulative error should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's motion to stay (no. 24) be denied;

2. Petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 02/02/2010

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

wol2527.157(2)